SHARP v. LAMY.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

1. CONVERSION BY SHERIFF — LEVY OF EXECUTION — POSSESSION BY THIRD PARTY.

     A plaintiff in possession of goods on which an execution is levied, claiming part of them under a mortgage of the judgment debtor and part as a purchaser, is not precluded from recovering against a sheriff for conversion of those held as purchaser because he did not at the time of the levy point them out to the officer.

2. SAME—MINGLING OF STOCK.

     Plaintiff secured a mortgage on a stock of drugs. Subsequently he purchased another stock, which was, by agreement, moved into the store with the former. The mortgagor continued in charge of the united stock until he surrendered possession to plaintiff. An execution on a judgment against the mortgagor was levied on the entire stock while in possession of plaintiff, and was sold. Plaintiff sued for the conversion. Held that, not having fraudulently intermingled the stocks, he was entitled to recover for the goods he purchased, and in which defendant in execution had no interest.

3. SAME—SALE BY SHERIFF—NOTICE OF OWNERSHIP.

     Where a sheriff is notified, prior to a sale of goods under execution, that plaintiff owned part of the goods by virtue of a mortgage, and the remainder absolutely, it is his duty, if he wishes to make any distinction in the sale of the two classes of goods, to have plaintiff point them out.

4. EVIDENCE—DECLARATION OF CLERK—ADMISSIBILITY.

　　Declarations of a clerk in the store, at the time of a conversion of goods, as to their ownership, are inadmissible in an action for the conversion, since outside the line of his duty.

Appeals from judgment on report of referee.

Action by Robert J. Sharp against George H. Lamy, sheriff of Erie county, for the conversion of a stock of drugs. From a judgment on report of a referee, both parties appeal. Reversed.

This action was begun September 30, 1897, to recover damages for the alleged conversion of a stock of drugs and drug-store furniture contained in a retail drug store known as the "German-American Pharmacy," at the corner of Oak and Virginia streets, in the city of Buffalo. The plaintiff asserts that he is the owner of part of the stock and furniture by a purchase from one Blackney, and of the remainder of the stock and furniture by reason of having taken possession under a chattel mortgage executed to him by Oscar G. Crandall. The defendant alleges that Oscar G. Crandall and the plaintiff were partners in conducting the drug store, and that he took the property by virtue of an execution against Crandall, and sold it October 4, 1897, for $100. November 7, 1895, Benedict Weber owned the stock and furniture in a retail drug store at No. 574 Oak street, in the city of Buffalo, which on that day he sold to Willard T. McElroy in consideration of $1,400. This retail store was then, and has ever since been, known as the "German-American Pharmacy." Afterwards, the date not appearing, McElroy sold the drug store and furniture to Rowell & Hopkins, who sold it January 7, 1897, to Oscar G. Crandall. At this date, Crandall was justly indebted in the sum of $1,200 to Dr. Robert J. Sharp, the plaintiff herein; and, for the purpose of securing the payment of that sum, Oscar G. Crandall, January 9, 1897, gave to Dr. Sharp a chattel mortgage on the drug store and furniture, by which Crandall agreed to pay Dr. Sharp $1,200, with interest, as follows: $300, April 9, 1897; $300, July 9, 1897; $300, October 9, 1897; and $300, January 9, 1898,—which mortgage was, January 9, 1897, duly filed in the office of the clerk of the county of Erie. The mortgage is in the ordinary form of chattel mortgages, and conveys the legal title of this property to the mortgagee, subject to a defeasance in case of nonpayment. The mortgage contains no provision in respect to the sale of the mortgaged chattels, nor in respect to the disposition of the avails of the sales. The referee finds, upon undisputed evidence, that, at the time the mortgage was executed, it was orally agreed between the mortgagor and the mortgagee that the mortgagor should continue the business of the store, paying, out of the avails, the bills, clerk hire, and rent, and should keep up the stock, and apply the balance upon the mortgage. This finding is not challenged by either litigant. The mortgagor made no payments on this mortgage. About April 12, 1897, the plaintiff purchased another stock of drugs, a soda fountain, and drug-store furniture of one Blackney, which were immediately removed to, and joined with, the stock in the German-American Pharmacy. This Blackney stock was found by the referee to have been worth $785; the soda fountain being worth $450, and the remainder of the property $335. The plaintiff gave, in payment for the Blackney stock, 15 shares of the Riverside Cemetery Association, of the par value of $100 each. When the Blackney stock was removed to the German-American Pharmacy it was agreed, between Crandall and Dr. Sharp, that it should be sold by the former; and that after the latter had received 75 per cent. of the par value of the cemetery stock, which equals $1,125, the remainder received from the Blackney stock should be equally divided between them. After this addition to the original stock of the store, the united stocks continued to be retailed by Crandall as before, until June 22, 1897, when nothing having been paid on the mortgage, or on account of sales from the Blackney stock, Dr. Sharp took possession of the mortgaged chattels by virtue of his aforesaid mortgage, and of the Blackney stock by virtue of his title thereto. At this date Crandall, having purchased an hotel, left the store, and thereafter gave no attention to its business; Dr. Sharp employing and paying the help, and opening a new set of books, which he continued until the property was seized by the defendant.

July 19, 1897, Benedict Weber began an action in the supreme court against Oscar G. Crandall, and September 17, 1897, recovered a judgment therein for $1,430.55, damages, and costs, and on the same day issued an execution to the sheriff of the county of Erie. On the next day, September 18, 1897, the sheriff, by virtue of the execution, levied upon all the goods and furniture in the German-American Pharmacy. On the 21st of September, 1897, the sheriff closed the store, took the key, and October 4, 1897, sold the stock and furniture for $100 to the plaintiff in the execution.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and Mc-LENNAN, JJ.

Frank Brundage, for plaintiff.
Frederick Haller, for defendant.

FOLLETT, J. The defendant appeals from the judgment awarding $450 damages for converting the soda fountain, and urges that the judgment should be reversed because the plaintiff in the action did not specifically point out the fountain, and assert his title as purchaser from Blackney; and cites, in support of his contention, Duke v. Welsh, 48 N. Y. Super. Ct. 516. In that case it does not appear that the goods taken by the sheriff on the execution were in the possession of the plaintiff. Moreover, after the goods had been seized, the defendant and the plaintiff were both present in the store, and the defendant spoke of the goods as his, and the plaintiff failed to point out the articles claimed to be owned by him. The facts in the case at bar are quite different. The defendant in the execution was not in possession of any of the goods taken by the sheriff, and had not been for nearly three months, during which time, as the referee finds, the plaintiff was in possession. Besides the facts referred to in the statement of facts, it appears, by the uncontradicted evidence, that the plaintiff, after he took possession, advertised the contents of the store for sale. When he advertised the goods, or how they were advertised, does not clearly appear. The evidence in this respect, as in many others, is lacking in particularity. Had the defendant in the execution been in possession of the goods at the time of the levy, so that the sheriff apparently had a right to seize them, it would have been the duty of the plaintiff to point out the goods which he claimed under the chattel mortgage and those which he claimed as purchaser. The plaintiff, not having fraudulently intermingled goods, was clearly entitled to recover for those goods which he had purchased of Blackney, and which the defendant in the execution had no interest in nor possession of. Davis v. Stone, 120 Mass. 228; 22 Am. & Eng. Enc. Law, 536 et seq., and cases cited. The deputy of the sheriff who executed the execution testified that when the property was sold the plaintiff served a typewritten notice on the witness not to sell. The notice was not read in evidence, but a statement of its contents is found at folio 126, by which it appears that the plaintiff asserted that he owned part of the goods by virtue of a chattel mortgage and the remainder absolutely. Having this notice, it was the duty of the sheriff, if he wished to make any distinction in his sale of the two classes of goods, to ask the plaintiff to point out those which he claimed under the chattel mortgage and those which he claimed by original purchase. Brush v. Batten, 15 N. Y. St. Rep. 548, affirmed in 134 N. Y. 617, 32 N. E. 648.

It follows that, the plaintiff having the right to recover for the soda fountain, the defendant has no ground for appeal. In addition to the soda fountain, it appears that the defendant took five show cases, show bottles, scales, and counters purchased by the plaintiff from Blackney. It is not asserted that these articles were so mingled with the property mortgaged that they were not easily identified, and the plaintiff's right to recover for these articles is as clear as his right to recover for the soda fountain, and the referee erred in limiting the plaintiff's recovery to the value of the soda fountain. The defendant was permitted to prove by the sheriff's deputy that on September 18, 1897, a young man in charge of the store said that it belonged to Mr. Crandall. This was error. This statement of the clerk was no part of his duty, and what he said was not competent on the question, who owned the property? For these errors the judgment should be reversed, and a new trial granted.

It is neither necessary nor wise to consider the question discussed as to the validity of the mortgage. The mortgage was valid on its face. The case is barren of evidence showing precisely what was done by the mortgagor and mortgagee in performance of the oral contract, under which some of the chattels mortgaged were retailed by Crandall, between the date of the mortgage, January 9, 1897, and June 22, 1897, when the plaintiff took possession. It does not definitely appear what the sales made by Crandall amounted to nor how the avails were applied. It does not appear how much new stock was purchased, how much paid for, and how much left unpaid for. It does appear that some goods were purchased by Crandall of a firm in Buffalo, for which the plaintiff subsequently paid, in whole or in part, but whether other goods were purchased by Crandall does not appear. It does appear that $60, arising from sales made by Crandall, were misapplied for his own benefit, without the knowledge of the plaintiff. The omitted facts referred to, and very likely other important facts, will be developed on a new trial; and the court will be better enabled to determine, as a question of fact, whether the mortgage, by virtue of the oral agreement between the mortgagor and mortgagee, as carried out by them, was rendered fraudulent.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except WARD, J., not voting.